UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HOPE HOUSE IN MIDLAND PA,**<br><br>Plaintiff,<br><br>v.<br><br>**BOROUGH OF MIDLAND,**<br><br>Defendant. | Case No. 2:24-cv-00456<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Hope House in Midland PA ("Hope House") brings this complaint against the Borough of Midland (the "Borough") because of its burdensome, unequal, and discriminatory enforcement of the Midland Borough Zoning Ordinance (the "Ordinance"), in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*

## INTRODUCTION

1.  Hope House is a Christian institution whose religious mission is to show love to homeless women and their minor children by providing them shelter, supplies, and aid, both physical and spiritual. In pursuit of this mission, Hope House sought to house single women and mothers with minor children at a residence located at 117 7th Street, Midland, Pennsylvania 15059 ("Residence") and provide in-house services. The Borough prevented Hope House from accomplishing its religious mission of providing shelter at the Residence by enforcing the Ordinance against Hope House.

2. Meanwhile, non-religious persons and entities providing housing at properties on the same street as the Residence openly violate the Ordinance, but the Borough has chosen to not enforce the Ordinance against any of these non-religious persons and entities. The Borough has not equally enforced the Ordinance because it has prohibited Hope House from housing tenants in the Residence by enforcing the Ordinance against Hope House while allowing non-religious persons and entities to house tenants in a way that violates the Ordinance. Further, the supposed harm of not following the Ordinance is the same both when Hope House houses individuals and when the non-religious persons and entities house individuals on the same street. Accordingly, the Borough is violating RLUIPA, which protects religious institutions like Hope House from unequal enforcement of zoning laws.

3. Among other requested relief, Hope House brings this action to obtain an injunction prohibiting the Borough and its members or agents from preventing the operation of the Residence through enforcement of the Ordinance.

## JURISDICTION AND VENUE

4. Hope House's claim arises under 42 U.S.C. § 2000cc.

5. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6. The court has personal jurisdiction over this action because the Borough is located in this District and because the acts complained of occurred in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in the Borough, which is located in this

District.

## THE PARTIES

8. Hope House is a Pennsylvania 501(c)(3) nonprofit corporation with a registered agent address of 117 7th Street, in Midland, Pennsylvania.

9. Hope House is a religious institution. As reflected by its organizational documents, activities, and leadership, it operates to practice tenets of the Christian religion, including by showing love to the poor, fatherless, and homeless through the provision of shelter, supplies, resources, and aid, both physical and spiritual.

10. The Borough is a municipal corporation organized and existing under the provisions of the Pennsylvania Borough Code, with a registered address of 936 Midland Avenue, Midland, Pennsylvania. The population of Midland in the 2020 census was 2,430.

11. The Borough is a "government" within the meaning of 42 U.S.C. § 2000cc-5(4)(A).

## STATEMENT OF FACTS

### A. Hope House and the Residence

12. In June 2020, multiple churches in Beaver County solicited donations and renovated the Residence pursuant to a religious calling to provide a facility for the homeless in the community.

13. In December 2020, Hope House purchased the newly renovated Residence to house homeless mothers and their minor children, in an effort to bring that religious calling into fruition.

14. It purchased the Residence in part because of all the groundwork laid by the churches to prepare the Residence to serve this religious function. Further, Hope House believed the Residence's location was an optimal place for it to carry out its ministry to mothers and their minor children based on its proximity to an elementary school and various churches and other community resources.

15. The Residence—a six-bedroom, two-and-one-half bath home with laundry facilities, a storage area, dining room, living room, full kitchen, and small office—is designed to house adult women and their minor children as residents.

16. Hope House plans to provide residents with various in-house services as part of its religious practices and intends to provide biblical counseling and classes in Christian discipleship. In furtherance of its religious mission to show love to the poor, fatherless, and homeless, Hope House will also provide guidance to residents on workforce development, financial management, and household management.

17. In addition to basic shelter, and as an expression of their Christian faith, Hope House will also provide residents of the Residence with food, personal hygiene products, diapers, baby formula, laundry detergent, and other items to meet their personal needs.

18. Residents will be supervised 24/7 by outdoor video cameras and a qualified "house host" who will live at the Residence and supervise the facility.

19. Mandy Baker is the Executive Director of Hope House. Ms. Baker was formerly a director at the United Brethren in Christ Church, a youth director at Northside Community Church, a Bible teacher at East Liverpool Christian School, and a volunteer with the Children Ministries at Four Mile Church. For nearly six years, Ms. Baker has

4

worked at the Rescue Mission of the Mahoning Valley, a faith-based, non-profit homeless shelter.

20. The Board Members of Hope House include, but are not limited to the following individuals:

- Evelyn Adams, affiliated with Saint George Orthodox Church;
- Paul Rockrage, affiliated with Saint Monica Catholic Church;
- Brenda Coble, affiliated with Saint Monica Catholic Church;
- Jen Miller, affiliated with Four Mile Church;
- Lynda Rossi, affiliated with Four Mile Church;
- Marcy Helm, affiliated with Mt. Olivet United Presbyterian Church and Four Mile Church;
- Kevin Bingle, affiliated with the First Presbyterian Church;
- PJ DiNuzzo, affiliated with the Saint Blaise Roman Catholic Parish; and
- Vince LaValle, affiliated with Saint Blaise Roman Catholic Parish.

**B. Land Use in the Borough**

21. The Ordinance identifies Midlands's various zoning districts, which include three separate residential districts: R-1 Single Family ("R-1"), R-2 Two Family ("R- 2"), and R-3 Multi-Family ("R-3"). *See* Ordinance, attached hereto as **Exhibit A**, § 201.

22. The Residence is in an R-1 district.

23. The Ordinance permits single-family houses in R-1 districts.

24. The Ordinance does not permit two-family houses in R-1 districts.

5

25. The Ordinance does not permit apartments, townhouses, or group homes in R-1 districts.

26. The Ordinance does not permit commercial uses in R-1 districts, nor does it allow religious ministries to operate as a matter of right within any residential zones.

27. Indeed, the Ordinance does not allow churches to operate anywhere in the Borough without first obtaining a conditional use permit.

28. The Ordinance defines a "single-family house" as "a detached building having accommodation for and occupied by not more than one (1) family." *See. Id.* § 601.

29. The Ordinance defines a "family" as "either an individual, or two (2) or more persons related by blood or marriage or adoption, or a group of not more than five (5) persons not so related (not counting servants) occupying a premises and living as a single housekeeping unit as distinguished from a group occupying a boarding house, lodging house, club fraternity or hotel." *See id.*

C. **The Borough Unequally Enforces the Ordinance Against Religious Entities**

30. The Borough has not enforced the R-1 district restrictions found in the Ordinance upon non-religious persons and entities providing housing to tenants at properties located on the same street as the Residence and in other R-1 districts zoned for single-family houses nearby. For example:

- 121 7th Street, the property directly neighboring the Residence, is located in an R-1 district, but the owner houses two or more families on the property not as a single house-keeping unit;

- 129 7th Street, the second property to the right of the Residence, is located in an R-1 district, but the owner houses two or more families on the property not as a single house-keeping unit;

- 133 7th Street (660 Ohio Avenue), the third property to the right of the Residence on the corner of Ohio Avenue is located in an R-1 district, but the owner houses two or more families on the property not as a single house-keeping unit; and

- 665 Penn Avenue, the property directly to the left of the Residence on the corner of 7th Street is located in an R-1 district, but the owner houses two or more families on the property not as a single house-keeping unit.

31. The Borough has not enforced the Ordinance against any of the nonconforming properties listed above, as well as others not listed.

32. Upon information and belief, many of these nonconforming properties located in R-1 districts zoned for single-family houses became multifamily properties after construction began on the Pennsylvania Shell Ethylene Cracker Plant near Midland in 2017.

33. For example, upon information and belief, multiple unrelated individuals working upon or at the Pennsylvania Shell Ethylene Cracker Plant resided or currently reside at 769 Ohio Avenue, a property located in an R-1 district zoned for single-family houses.

34. Other properties located in R-1 districts zoned for single-family houses have been converted from single-family houses to offices and are currently used as offices, including:

- 935 Ohio Avenue, a former single-family home, which is now used as an office building for the Lincoln Park Performing Arts Center; and

- 872 Beaver Avenue, a former single-family home, which is also used as an office building for the Lincoln Park Performing Arts Center.

35. Although the Borough chooses not to enforce the Ordinance against the

7

aforementioned non-religious entities, it seeks to unequally enforce the Ordinance against Hope House, a religious entity.

### D. The Borough Denies Hope House's Request to Operate Its Ministry

36. Despite letting non-religious persons and institutions violate the R-1 district zoning restrictions found in the Ordinance, the Borough has denied Hope House's request to house homeless women and their minor children in a manner that does not conform to the R-1 zoning district's restriction on limiting the use of residences to single family houses. Particularly, Hope House seeks to house five or more persons in the Residence who are unrelated by blood, marriage, or adoption.

37. Recognizing that such a use did not conform to the Borough's R-1 zoning restrictions, Hope House sought to work cooperatively with the Borough to obtain approval to operate its religious ministry at the Residence in the summer of 2020.

38. But instead of assisting Hope House with opening its ministry to benefit the most vulnerable in the community, the Borough led Hope House on a wild goose chase through various administrative proceedings that ultimately resulted in the Borough denying Hope House's request to operate its ministry.

39. Specifically, on March 10, 2021, Hope House petitioned the Borough to amend the Ordinance and allow the Residence to operate in the R-1 district to "provide or arrange for the provision of daily personal housing, social or rehabilitative services, counseling, support, care or treatment." The Borough held a public hearing on May 13, 2021, and then unanimously voted against Hope House's proposed amendment on June 25, 2021.

40. On July 7, 2021, Hope House timely appealed the Borough's initial rejection of the amendment to the Common Pleas Court, which denied the land use appeal on January 25, 2022.

41. On May 20, 2022, Hope House timely appealed the Common Pleas Court denial to the Commonwealth Court of Pennsylvania, which affirmed the Common Pleas Court's denial of the land use appeal and upheld the Borough's determination regarding Hope House's petition for an amendment to the Ordinance as final.

42. The Borough has explicitly stated that "any unauthorized use" of the Residence by Hope House "will result in vigorous enforcement action by the Borough," including legal action.

43. The Borough has made no effort to explain why its unequal treatment of Hope House compared to other non-religious persons and entities advances an interest or goal of the Borough, and an exemption for Hope House from the R-1 zoning restriction would result in the same effect as the exemptions that the Borough has provided to all the non-religious persons and entities presently providing housing to tenants in a manner that violates the R-1 zoning district's restriction to single-family dwellings.

44. As a result of the Borough's unequal treatment, Hope House lost crucial grants and donations from all donors while it continues to incur operating expenses without being able to fulfill its religious mission of providing housing and aid to homeless women and their minor children.

## COUNT I
## "SUBSTANTIAL BURDENS"
## VIOLATION OF RLUIPA, 42 U.S.C. § 2000cc

45. Hope House repeats and realleges each and every allegation in paragraphs 1 through 44 as if fully set forth and restated herein.

46. RLUIPA prohibits substantial burdens being placed on Hope House's religious exercise by prohibiting the Borough from "impos[ing] or implement[ing] any land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." 42 U.S.C. § 2000cc(a).

47. The Ordinance is a land-use regulation to which RLUIPA applies.

48. Although the Borough knew that Hope House is a religious institution, that knowledge is not a necessary element for an RLUIPA claim. *See id.* § 2000cc(b)(1).

49. The Borough has a system of "individualized assessments" for how it categorizes land uses under its zoning code. *See id.* § 2000cc(a)(2)(C).

50. The Borough's actions in impeding Hope House from opening and operating the Residence substantially burdens Hope House, who wishes to practice its religious mission by providing in-house services to homeless women and minor children in accordance with the commands of the Christian religion.

51. The Borough has never articulated a compelling governmental interest for placing a substantial burden on Hope House.

52. The Borough has chosen to selectively enforce the Ordinance under which it seeks to prevent Hope House from using the Residence for religious purposes.

53. As a direct result of this RLUIPA violation, Hope House has suffered and

will continue to suffer irreparable harm and is entitled to declaratory and injunctive relief, along with attorney's fees and other appropriate relief.

54. The Borough's actions are in violation of RLUIPA.

## COUNT II
## "EQUAL TERMS"
## VIOLATION OF RLUIPA,
## 42 U.S.C. § 2000cc(b)(1)

55. Hope House repeats and realleges each and every allegation in paragraphs 1 through 54 as if fully set forth and restated herein.

56. RLUIPA prohibits the Borough from "impos[ing] or implement[ing] any land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." *Id.* § 2000cc(b)(1).

57. The Ordinance is a land-use regulation to which RLUIPA applies.

58. Although the Borough knew that Hope House is a religious institution, that knowledge is not a necessary element for an RLUIPA claim. *See id.*

59. The Borough's enforcement of the Ordinance against Hope House treats Hope House on less-than-equal terms than non-religious institutions that provide housing in the R-1 zoning district in violation of the R-1 zoning district's restriction to single family housing.

60. The Borough's actions in impeding Hope House's exercise of religion constitute the enforcement of a land use regulation in a manner treating Hope House on less-than-equal terms as prohibited by RLUIPA. *Id.*

61. The Borough has never articulated why exempting non-religious persons and

entities that provide housing from its R-1 zoning restrictions would serve any regulatory purpose, and, in any event, the effect of exempting Hope House's use of the Residence from the R-1 zoning restrictions would be the same as the effect of exempting the non-religious persons and entities.

62. As a direct result of this RLUIPA violation, Hope House has suffered and will continue to suffer irreparable harm and is entitled to declaratory and injunctive relief, along with attorney's fees and other appropriate relief.

63. The Borough's actions are in violation of RLUIPA.

**COUNT III**
**"EXCLUSION AND LIMITS"**
**VIOLATION OF RLUIPA,**
**42 U.S.C. § 2000cc (b)(3)(B)**

64. Hope House repeats and realleges each and every allegation in paragraphs 1 through 63 as if fully set forth and restated herein.

65. RLUIPA prohibits exclusion of religious institutions through the "impos[ition] or implement[ation of] a land use regulation that (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." *Id.* § 2000cc (b)(3)(B).

66. The Ordinance is a land-use regulation to which RLUIPA applies.

67. Although the Borough knew that Hope House is a religious institution, that knowledge is not a necessary element for an RLUIPA claim. *See id.* § 2000cc(b)(1).

68. The Ordinance unreasonably limits Hope House from exercising its religious mission to provide housing and in-house services to homeless women and minor children

12

in keeping with the tenets of the Christian religion.

69. Specifically, the Ordinance does not allow Hope House to exist as a matter of right anywhere in the Borough and has had the effect of unreasonably limiting Hope House's ability to operate its ministry pursuant to its religious mission.

70. The Borough has chosen to selectively enforce the Ordinance under which it seeks to prevent Hope House from using the Residence for religious purposes, in a way that constitutes a land-use regulation that unreasonably limits religious institutions.

71. As a direct result of this RLUIPA violation, Hope House has suffered and will continue to suffer irreparable harm and is entitled to declaratory and injunctive relief, along with attorney's fees and other appropriate relief.

72. The Borough's actions are in violation of RLUIPA.

## COUNT IV
## "DISCRIMINATION"
## VIOLATION OF RLUIPA,
## 42 U.S.C. § 2000cc(b)(2)

73. Hope House repeats and realleges each and every allegation in paragraphs 1 through 72 as if fully set forth and restated herein.

74. Under RLUIPA, the government is prohibited from imposing or implementing "a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." *Id.* § 2000cc(b)(2).

75. The Ordinance is a land-use regulation to which RLUIPA applies.

76. Although the Borough knew that Hope House is a religious institution, that knowledge is not a necessary element for an RLUIPA claim. *See id.* § 2000cc(b)(1).

77. The Ordinance discriminates against Hope House because the Borough is selectively enforcing the Ordinance in order to prevent Hope House from using the Residence to operate its ministry pursuant to its religious mission.

78. Specifically, the Borough is selectively enforcing the Ordinance in a manner that targets Hope House's religious activities for disparate treatment while allowing other properties in R-1 districts to house two or more families.

79. As a direct result of this RLUIPA violation, Hope House has suffered and will continue to suffer irreparable harm and is entitled to declaratory and injunctive relief, along with attorney's fees and other appropriate relief.

80. The Borough's actions are in violation of RLUIPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Hope House requests that this Court enter judgment in its favor and against the Borough as follows:

A. An order declaring that the Borough's actions and inactions, as described herein, violate Hope House's rights under RLUIPA.

B. An order permanently enjoining the Borough and its agents from actions that violate Hope House's rights under RLUIPA.

C. An order permanently enjoining the Borough's unequal enforcement of the Ordinance against Hope House.

D. An award of reasonable operating expenses for the timeframe throughout which the Borough prohibited Hope House from operating.

E. An award of monetary damages to be determined at trial.

F.  Pursuant to 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000cc *et seq.*, an award of Hope House's reasonable attorney's fees and court costs.

G.  An award of such other and further relief as this Court deems appropriate.

Dated: March 26, 2024

Respectfully,

/s/ *Falco A. Muscante II*
H. Woodruff Turner (Pa. Bar No. 1402)
Nathan Townsend (Pa. Bar No. 327215)
Falco A. Muscante II (Pa. Bar No. 333759)
**K&L GATES LLP**
210 Sixth Ave.
Pittsburgh, PA 15222
Phone: (412) 355-6500
woodruff.turner@klgates.com
nathan.townsend@klgates.com
falco.muscanteii@klgates.com

Jeremy Dys
(*pro hac vice* forthcoming)
Ryan Gardner
(*pro hac vice* forthcoming)
**FIRST LIBERTY INSTITUTE**
2001 W. Plano Pkwy, Suite 1600
Plano, TX 75075
Phone: (972) 941-4444
jdys@firstliberty.org
rgardner@firstliberty.org
cvarone@firstliberty.org

Camille P. Varone
(*pro hac vice* forthcoming)
**FIRST LIBERTY INSTITUTE**
1331 Pennsylvania Ave., N.W.
Suite 1410
Washington, DC 20004
Phone: (202) 921-4105
cvarone@firstliberty.org

***Attorneys for Plaintiff Hope House***